**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

_____
                                        )
Albert Koetsier,                        )        Case No.: 23-cv-2176
                                        )
            Plaintiff,                  )
        v.                              )        Judge: Honorable Elaine E. Bucklo
                                        )
Does 1-434, As Identified in Exhibit 2, )
                                        )        Magistrate: Honorable Gabriel A. Fuentes
            Defendants.                 )
_____)


**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY
OF A (1) TEMPORARY RESTRAINING ORDER, (2) ASSET RESTRAINING
ORDER, (3) EXPEDITED DISCOVERY ORDER, AND (4) SERVICE OF PROCESS
BY EMAIL**

### TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................... 1

II. STATEMENT OF FACTS ................................................................................................. 2

A. Plaintiff's Copyright and Work…. ............................................................................. 2

B. Defendants' Illegal Activities.................................................................................... 3

III. ARGUMENT .................................................................................................................... 5

A. This Court Has Jurisdiction Over the Parties and Subject-Matter…………………………… 5

B. A Temporary Restraining Order Is Customary And Appropriate……………………………7

C. Standard for Temporary Restraining Order and Preliminary Injunction ................................. 8

D. Plaintiff Will Likely Succeed on the Merits............................................................... 9

i. Plaintiff Will Likely Succeed on Its Copyright Infringement and Counterfeiting Claim ........... 9

ii. Plaintiff Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practice Act Claim .. 11

E. There Is No Adequate Remedy at Law and Plaintiff Is Likely to Suffer Irreparable Harm in

the Absence of Preliminary Relief ............................................................................... 12

F. The Balancing of Harms Tips in Plaintiff's Favor.................................................... 13

G. Issuance of the Injunction Is in the Public Interest.................................................... 14

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE .................................................. 15

A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Illegal

Use of Plaintiff's Works and Images Is Appropriate .................................................... 15

B. An Order Preventing the Fraudulent Transfer of Assets Is Appropriate................................. 16

V. PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY .................................................. 17

VI. SERVICE OF PROCESS BY EMAIL IS WARRANTED IN THIS CASE ................................ 19

VII. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF.................................................. 23

VIII. CONCLUSION ............................................................................................................... 23

TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992) ................................................... 9

*Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665 (N.D. Ill. 1998) ……………….... 11

*Atari, Inc. v. North American Philips Consumer Elec. Corp.*, 672 F.2d 607 (7th Cir. 1982) ……. 14

*Century Home Entmt. Inc. v. Laser Beat, Inc.*, 859 F. Supp. 636 (E.D.N.Y. 1994) …………….. 15

*Christian Dior Culture, S.A. v. Liu*, 2015 U.S. LEXIS 158225 (N.D. Ill. Nov. 17, 2015) ……….. 7

*Chrome Hearts LLC v. Partnerships & Unincorporated Assns. Identified on Schedule "A"*, 2015 U.S. Dist. LEXIS 120232 (N.D. Ill. Sept. 9, 2015) ……………………………………… 7

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075 (N.D. Ill. 1996) ............................... 8

*CRC Press, LLC v. Wolfram Research, Inc.*, 149 F. Supp. 2d 500 (C.D. Ill. 2000) …………….. 12

*CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ……………………………………. 16

*Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, 2010 WL 4877708 (N.D. Ill. 2010).... 6

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000)........................................ 9

*Entertainment One UK Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 18-cv-04926 (N.D. Ill. Aug. 2, 2018) ………………………….. 7

*Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061 (7th Cir. 1994) ……………………………….. 14

*Feist Pub., Inc. v. Rural Tel. Serv. Co. Inc.*, 499 U.S. 340 (1991) ……………………………. 10

*Gallery House, Inc. v. Yi*, 582 F. Supp. 1294 (N.D. Ill. 1984) ……………………………….. 13

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) .............................................................. 17-18

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA*, 549 F.3d 1079 (7th Cir. 2008)……… 9

*Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999) ...................... 16

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (4th Cir. 1999).............................. 23

*Igram v. Page*, 98 C 8337, 1999 WL 705895 (N.D. Ill. Aug. 27, 1999) ……………………… 12

*Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010)........................................................... 6

*In re Aimster Copyright Litigation*, 252 F. Supp. 2d 634 (N.D. Ill. 2002) ………………………. 14

*In re LDK Solar Secs. Litig.*, 2008 WL 2415186 (N.D. Cal. Jun. 12, 2008)................................... 22

*In re Potash Antitrust Litig.*, 667 F. Supp. 907 (N.D. Ill. 2009) .................................................. 22

*Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584 (D.D.C. Jan. 30, 2008) ............................................................................................................................. 21

*Kinsey v. Jambow, Ltd.*, 76 F. Supp. 3d 708 (N.D. Ill. 2014) …………………………… 12-13

*Long v. Board of Educ., Dist. 128*, 167 F.Supp.2d 988 (N.D. Ill. 2001)……………………… 8-9

*Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc., No 1:03-cv-04844*, 2005 WL 3115892 (N.D.Ill. Nov. 8, 2005) ................................................................... 17

*Millennium Media, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 18-cv-05856 (N.D. Ill. Sept. 4, 2018) ………………………….. 7

*Monster Energy Co. v. Chen Wensheng*, 2015 U.S. Dist. LEXIS 132283 (N.D. Ill. Sept. 29, 2015)………………………………………………………………………….. 7

*Oakley, Inc. v. Does 1-100;* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) ……….. 21, 23

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).............................................................. 17

*Pink Floyd (1987) Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 18-cv-05562 (N.D. Ill. Aug. 24, 2018) ………………………….. 7

*Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560 (E.D. Tenn. 2004)……... 21, 23

*Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003)......................... 6

*Rathmann Grp. v. Tanenbaum*, 889 F.2d 787 (8th Cir. 1989)........................................................ 23

*Right Field Rooftops, LLC v. Chicago Baseball Hldgs., LLC*, 87 F.Supp.3d 874 (N.D. Ill. 2015).. 8

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ...................................... 21, 22

*Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097 (N.D. Ill. 2005) …………..……… 10

*Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567 (N.D. Ill. 1994) .................................................. 11

*True Religion Apparel, Inc. v. Does 1-100;* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ...................................................................................................................................... 23

*Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001) .............................................. 9, 13

*uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421 (7th Cir. 2010)................................................. 6

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007) ………… 17

**STATUTES**

Article 1 of the Hague Service Convention, Art. 1, 20 U.S.T. at 36 …………………………… 20

17 U.S.C. § 502.................................................................................................................. 7

17 U.S.C. § 504 …….......................................................................................................... 9

15 U.S.C. § 1125(a) ........................................................................................................... 12

28 U.S.C. § 1331 ............................................................................................................... 5

28 U.S.C. § 1367(a) ........................................................................................................... 5

28 U.S.C. § 1391 ............................................................................................................... 5

28 U.S.C. §§ 1338 ............................................................................................................. 4

Fed. R. Civ. P. 26(b)(2)...................................................................................................... 17

Fed. R. Civ. P. 4(f)(3) ....................................................................................................... 19

Fed. R. Civ. P. 64 .............................................................................................................. 17

Fed. R. Civ. P. 65 .............................................................................................. *passim*

735 ILCS 5/2-209………………………………………………………………….... 6

## MEMORANDUM OF LAW

### I. INTRODUCTION

Plaintiff Albert Koetsier brings this action against Defendants, as identified on Exhibit 2 of the Complaint (filed under seal Dkt. 2) (collectively, the "Defendants") for copyright infringement (Count I), Unfair Competition under the Lanham Act (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III). As alleged in the Complaint, the Plaintiff, an internationally renowned artist, is the owner and licensor of each of the attached United States Copyright Registrations in Exhibit 1 to the Complaint ("X-Ray Flower Works"), with all rights to sue and enforce the copyright. The Defendants are illegally promoting, copying, manufacturing, distributing, offering for sale and selling counterfeit versions of Plaintiff's X-Ray Flower Works, through various websites/webstores designed to mislead consumers that the products sold are genuine X-Ray Flower art, including by displaying, without authorization or permission, official stock photos of the X-Ray Flower Work used by Plaintiff in its marketing.

The Defendants utilize third-party online merchant platforms to virtually peddle to unknowing consumers X-Ray Flower goods that are low-quality, unlicensed counterfeits of Plaintiff's original artwork shoddily printed on various objects. Defendants attempt to avoid liability by concealing their identities and true nature of their criminal copyright infringement and counterfeiting operation by utilizing pseudonyms and failing to disclose that they are not selling legitimate X-Ray Flower Works but instead are offering substandard and unlicensed imitations. Plaintiff is forced to file these actions to combat Defendants' illegal infringement and counterfeiting of the Plaintiff's copyrighted and registered X-Ray Flower Work, as well as to protect unknowing consumers from purchasing low-quality counterfeits over the Internet through the Defendants.

Defendants directly target their unlawful business activities toward consumers in Illinois and

cause harm to Plaintiff's business and interests within the Northern District of Illinois, and have caused and will continue to cause irreparable injury to Plaintiff. Defendants deceive the public by trading upon Plaintiff's reputation and goodwill by using the X-Ray Flower Work and official images in their webstore counterfeit product listings websites to sell their copied X-Ray Flower Works.

As such, Plaintiff respectfully requests that this Court issue, *ex parte*, (1) a temporary restraining order against Defendants preventing them from advertising, offering for sale, selling, distributing, transferring, assigning, destroying, or concealing any X-Ray Flower Works, copies of X-Ray Flower Works that are in Defendants' possession, or derivative works substantially similar to X-Ray Flower Works; (2) an order temporarily disabling the Infringing Webstore listings pending the issuance of a final judgment in this matter; (3) an order temporarily restricting transfer of Defendants' assets to preserve Plaintiff's rights to an equitable accounting; (4) an order for expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the manufacture, distribution, offer for sale and sale of counterfeit Plaintiff products and Defendants' financial accounts; and (5) an order allowing service of process by electronic mail.

## II. STATEMENT OF FACTS

### A. Plaintiff's Copyrighted, Registered, and Protected Works

Albert Koetsier ("Koetsier") is an individual artist whose creative expressions are regularly licensed in various approved instances. One of Koetsier's standout items are the "X-Ray Flower" family of artworks featuring flower images taken with x-rays and colored ("X-Ray Flower" or "X-Ray Flower Work"). Some examples of the signed authentic works are depicted below:



Koetsier licenses the X-Ray Flower Work. *See* Declaration of Albert Koetsier at ¶ 2. Koetsier has expended considerable resources advertising, marketing and promoting the X-Ray Flower Work, and these efforts have resulted in substantial sales of Koetsier products and recognition for the creative, beautiful and expressive works of art. *Id.* at ¶ 4-7.

### B. Defendants' Illegal Activities

Defendants almost exclusively advertise their Counterfeit Products on the infringing websites by blatantly referring to their products as X-Ray Flower goods and failing to disclose that their goods are unlicensed knock-offs so that consumers are unaware they are not buying genuine X-Ray Flower Products. *See* Declaration of Rishi Nair at ¶¶3, 5, 6.

Plaintiff reviewed and confirmed that imitation knockoffs were being offered for sale to residents of the United States and the State of Illinois. *Id.* at ¶5. Plaintiff also visited each of the Infringing Webstores and confirmed that Defendants and the Infringing Websites do not conduct business with Plaintiff and do not have the right or authority to use the X-Ray Flower Work or copyrighted images for any reason. *Id.* Unknowing customers mistakenly believe the Infringing Webstore listings are authorized listings or wholesalers selling genuine X-Ray Flower Products due to their infringing use of copyrighted images and their poorly-made copies of the X-Ray Flower Work. *Id.*

Further, the knock-offs all directly copy and apply the X-Ray Flower Works as if they were the official print seller.

The Defendants' operation indicates at least one common manufacturer supplying these counterfeiters with prints of Plaintiff's Works. Attached as Exhibit 3 is a true and accurate copy of a listing by the suspected manufacturer located in China and offering the infringing product sold by the Defendants. Attached as Exhibit 4 is a true and accurate copy of a machine translated copy

of Exhibit 3. These suppliers have equipment to allow any enterprising infringer to merely click and download any image and then apply it to virtually any article of household goods.

Due to nature of Defendants' illegal counterfeiting activities, monetary damages cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control and damage to Plaintiff's reputation and goodwill that have been meticulously cultivated among the consuming public for many years. *See* Koetsier Declaration at ¶¶14-18.

Counterfeiters, like Defendants, take away the Plaintiff's ability to control the nature , quantity, and quality of the prints sold, as well as consumer expectations regarding the its unique originality and fitness for a particular purpose, and this reputational harm also drives down the sales of Plaintiff's other artistic and copyrighted works. *Id.* Loss of quality control over works bearing the X-Ray Flower Work and, in turn, loss of control over Plaintiff's reputation, is neither calculable nor precisely compensable. *Id.* at ¶¶14-18.

Further, Plaintiff's goodwill and reputation are irreparably damaged when the X-Ray Flower Work is used on goods not authorized, produced or manufactured by the Plaintiff. *Id.* at ¶¶16-18. Plaintiff has been told by consumers who purchased a counterfeit X-Ray Flower work that the item has poorer print quality and is applied to materials that are of poor quality. This leads to brand confidence being damaged, resulting in loss of future sales and market share, as the X-Ray Flower works appear less stunning and degrade due to ultraviolet light exposure or other issues. *Id.* It is difficult to ascertain or calculate the extent of harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence. *Id.*

Acting in concert, Defendants employ certain tactics to conceal their identities, such as utilizing common logistics with shared untraceable tracking numbers through Chinese and US

postal services, as well as the full scope of their counterfeiting operation. These efforts make it virtually impossible for Plaintiff to learn Defendants' true identities and locations. These kinds of Defendants, namely those that fence counterfeit goods online, use judicial notice to abscond with their ill-gotten profits beyond the effective reach of rights owners seeking to enforce their rights.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful infringing conduct is causing, and will continue to cause, irreparable harm to Plaintiff. The Defendants willfully violated the Plaintiff's copyright rights by manufacturing knock-off X-Ray Flower Works, misappropriating and using official product images of the X-Ray Flower Works created by Plaintiff to market the X-Ray Flower Works, and offering for sale or selling the X-Ray Flower Works to potential customers seeking authentic X-Ray Flower Works.

To stop Defendants' sale of counterfeit X-Ray Flower Products, Plaintiff respectfully requests that this Court issue a temporary restraining order ordering, among other things, the freezing of Defendants' assets and Webstores. Without the relief requested by Plaintiff's instant Motion, Defendants' illegal activities will continue unabated, and Plaintiff and consumers, including those in the Northern District of Illinois, will suffer irreparable harm.

### A. This Court Has Jurisdiction Over the Parties and Subject-Matter.

This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331, 1338(a)-(b). Additionally, the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) are also properly brought before this Court because they are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this is the judicial district in which a substantial part of the acts and

omissions giving rise to the claims occurred. See Pl.'s Compl., Dkt #1, at ¶¶ 9–10.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in Illinois and cause harm to the Plaintiff's business within this Judicial District. Plaintiff relies on sales to Illinois and its sales to the state are not insignificant. On information and belief, each Defendant targets Illinois residents and has exhibited, sold, and shipped counterfeit X-Ray Flower Works to consumers within the State of Illinois. See *id*. at ¶¶32, 40.

Without the benefit of an evidentiary hearing, a plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of a plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc*. 623 F.3d 421, 423 (7th Cir. 2010); *see also, Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.")

Furthermore, Illinois courts regularly exercise personal jurisdiction over websites offering for sale and selling infringing and counterfeit merchandise to Illinois residents over the Internet. 735 ILCS 5/2-209(a)(2); *See, e.g., Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, 2010 WL 4877708, 4 (N.D. Ill. 2010) ("To sell an infringing article to a buyer in Illinois is to commit a tort in Illinois sufficient to confer jurisdiction under the tort provision of the long-arm statute. Intellectual property infringement takes place in the state of the infringing sales ... for purposes of tort provisions of the Illinois long arm-statute."); *Illinois v. Hemi Group LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (defendants stood ready and willing to do business with Illinois residents, and in fact, knowingly did do business with Illinois residents by selling products to Illinois residents);

*See, e.g., Christian Dior Culture, S.A. v. Liu*, 2015 U.S. LEXIS 158225 (N.D. Ill. Nov. 17, 2015); *Monster Energy Co. v. Chen Wensheng*, 2015 U.S. Dist. LEXIS 132283 (N.D. Ill. Sept. 29, 2015); *Chrome Hearts LLC v. Partnerships & Unincorporated Assns. Identified on Schedule "A"*, 2015 U.S. Dist. LEXIS 120232 (N.D. Ill. Sept. 9, 2015).

Through at least the fully interactive commercial Internet websites and Webstores operated by each Defendant, each of the Defendants has targeted and solicited sales from Illinois residents by offering shipping to Illinois and have, on information and belief, actually sold counterfeit Plaintiff works to residents of Illinois. Nair Declaration at ¶¶3, 5. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

### B. A Temporary Restraining Order Is Customary and Appropriate.

Rule 65(b) of the Federal Rules of Civil Procedure provides that that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. FED. R. CIV. P. 65(b). Further, the Copyright Act authorizes this Court, vested with jurisdiction, to issue such Orders to prevent further infringement of registered works, like the X-Ray Flower Work. 17 U.S.C. § 502 (a).

Here, the Defendants, without authorization, misappropriated official X-Ray Flower Work images of the Plaintiff to fraudulently promote, advertise, offer to sell and sell replica prints of the X-Ray Flower Work. Nair Declaration at ¶¶ 3, 5.

The entry of a temporary restraining order is appropriate because it will immediately stop the Defendants from benefiting from their wrongful use of the X-Ray Flower Work and preserve the *status quo* until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, Defendants can and likely will sell their remaining collection of X-Ray Flower Works to other buyers and repatriate those ill-gotten funds back to foreign nations, in order to circumvent the Plaintiff's ability to gain meaningful relief.

In addition, courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ("proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers before temporary injunctive and impoundment relief can be granted").

Considering the covert nature of offshore infringing activities and the vital need to establish an economic disincentive for infringement, courts regularly issue *ex parte* Temporary Restraining Orders to restrain copyright infringement. *See, e.g., Pink Floyd (1987) Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 18-cv-05562 (N.D. Ill. Aug. 24, 2018); *Entertainment One UK Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 18-cv-04926 (N.D. Ill. Aug. 2, 2018); and *Millennium Media, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 18-cv-05856 (N.D. Ill. Sept. 4, 2018).

As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

### C.  Standard for Temporary Restraining Order and Preliminary Injunction

The standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 87 F.Supp.3d 874, 877 (N.D. Ill. 2015) (citing *Long v. Board of Educ., Dist. 128*, 167

F.Supp.2d 988 (N.D. Ill. 2001)). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in "the sliding scale approach" -- the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 896.

### D.  Plaintiff Will Likely Succeed on the Merits

#### i. Plaintiff Will Likely Succeed on Its Copyright Infringement Claim

The greater the movant's likelihood of succeeding on the merits, the less the balance of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). Indeed, Plaintiff need only demonstrate a "better than negligible" chance of success on the merits of at least one of its claims, a standard the Seventh Circuit has characterized as a "low requirement." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA*, 549 F.3d 1079, 1096 (7th Cir. 2008).

To succeed on a copyright infringement claim, a plaintiff is required to prove: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *Feist Pub., Inc. v. Rural Tel. Serv. Co. Inc.*, 499 U.S. 340, 361 (1991). A plaintiff can prove copying either directly or indirectly by establishing that the defendant had access, and produced something "substantially similar" to the copyrighted work. *See id*; *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005).

To determine whether there is a substantial similarity indicative of copyright infringement, courts use the "ordinary observer" test which asks whether "an ordinary reasonable person would conclude that the defendant unlawfully appropriated protectable expression by taking material of substance and value." *Spinmaster*, 404 F. Supp. 2d at 1102. A work may be deemed infringing if it captures the "total concept and feel of the copyrighted work." *Id*.

Here, Plaintiff's ownership is evidenced by his copyright registrations and the use of the work. *See* Koetsier Declaration at ¶4. Furthermore, Plaintiff has never licensed or given any of the Defendants the right to use any of the Plaintiff's copyrights. *See* Koetsier Declaration at ¶¶8, 11.

Copying is self-evident from Plaintiff's screenshots of the listings. *See generally* "Listing Screenshots" Nair Declar., Exhibit 1 (under seal). Each of the Defendants' displayed the official X-Ray Flower Work image as created by Plaintiff to market the work as well as produced a substantially similar X-Ray Flower Work print *See generally* "Listing Screenshots". The copying is readily apparent and cannot be denied.

These original elements are all directly stolen and therefore these are identical copies or substantially similar to the point where buyers are unable to discern the difference.

Neither ownership nor the fact of copying is likely to be disputed in this case. The

screenshot evidence clearly displays the identical nature of each Defendant's pirated X-Ray Flower Works. *See* "Listing Screenshots". Each element of Plaintiff's work is replicated and offered for and sold within Illinois.

Finally, all of Defendants' infringing conduct was undertaken without the Plaintiff's permission or authorization. The Plaintiff has established a substantial likelihood of success on the merits of its copyright infringement claim.

ii. <u>Plaintiff Is Likely to Succeed on Its
Illinois Uniform Deceptive Trade Practice Act Claims</u>

In Illinois, courts resolve unfair competition and deceptive trade practice claims "according to the principles set forth in the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state based infringement claims. *Id.* at 579 (citation omitted). The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practice Act. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998).

To prevail on a false-advertising claim under the Lanham Act, a plaintiff must satisfy the following elements: (1) a false or misleading statement of fact; that is (2) used in a commercial advertisement or promotion; that (3) deceives or is likely to deceive in a material way; (4) in interstate commerce; and (5) has caused or is likely to cause competitive or commercial injury to the plaintiff. 15 U.S.C. § 1125(a)(1).

Here, Defendant's online listings are replete with false, misleading, and improper statements about the origin of the prints, the authenticity, as well as the quality of their copied works. The Defendants use those false statements to promote goods they sell in interstate commerce and consumers clearly rely on those statements in those online listings to make

purchasing decisions and the cumulative effect is a negative financial effect on Plaintiff by siphoning off sales as well as harming Plaintiff's reputation negatively for perceived quality of Plaintiff's authentic prints as well as the artistic and creative ability of Plaintiff in terms of other prints and works Plaintiff has created. *See* Koetsier Declaration at ¶¶ 14-18.

Because Plaintiff has established a likelihood of success on the merits of likelihood of confusion in its trademark infringement and counterfeiting claim against Defendants, and the standard is the same under Illinois law, Plaintiff has established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

### E. There Is No Adequate Remedy at Law and Plaintiff Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

A preliminary injunction serves the public interest in maintaining the integrity of copyright law. *CRC Press, LLC v. Wolfram Research, Inc.*, 149 F. Supp. 2d 500, 511 (C.D. Ill. 2000) (citing *Igram v. Page*, 98 C 8337, 1999 WL 705895, at *2 (N.D. Ill. Aug. 27, 1999)). The essence of the injury in "copyright infringement is that the copyright owner is deprived of control over the use of the copyrighted material." *Igram v. Page*, 98 C 8337, 1999 WL 705895, at *2 (N.D. Ill. Aug. 27, 1999).

Courts have also held that irreparable injury is evident where a defendant has "usurped" plaintiff's "creative control" by unlawfully licensing plaintiff's copyrighted work. *See Kinsey v. Jambow, Ltd.*, 76 F. Supp. 3d 708, 710 (N.D. Ill. 2014) (finding irreparable injury where defendant licensed plaintiff's copyrighted work without authorization).

Defendants' unauthorized exploitation of the copyrighted X-Ray Flower Work has irreparably harmed, and continues to irreparably harm, Plaintiff through: (a) the misappropriation of the Plaintiff's ability to control the quality and quantity of prints made from and utilizing the X-Ray Flower Work; (b) depriving the Plaintiff of its right to select which X-Ray Flower Works

should be commercially available and exploited; and (c) depriving the Plaintiff of controlling the market costs and profits from the offer of and sale of X-Ray Flower Works. *See* Koetsier Dec. at ¶¶ 14-18.

As such, Plaintiff should be granted immediate *ex-parte* injunctive relief to stem this harm and maintain the *status quo* during these trying times.

### F. The Balancing of Harms Tips in Plaintiff's Favor

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the irreparable harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Plaintiff will suffer if relief is denied. *TY, Inc.*, 237 F.3d at 895.

The balancing of harms tips decidedly in the Plaintiff's favor. As willful infringers, Defendants are entitled to little equitable consideration. *See Gallery House, Inc. v. Yi*, 582 F. Supp.1294, 1298 (N.D. Ill. 1984) (the possibility that a defendant will lose profits "merits little equitable consideration;" and, an infringer has no "standing to complain that his vested interest will be disturbed").

To the extent Defendants would be harmed at all by an injunction, that harm is far outweighed by the immeasurable damage that would be done to the Plaintiff if Defendants were to divest themselves of the X-Ray Flower Works in Defendants' possession, both making some of the Plaintiff's most significant remedies futile and potentially depriving the Plaintiff of the assets generated from the sale of infringing works. Therefore, the balance of harms favors the Plaintiff.

As Plaintiff has demonstrated, Defendants have been profiting from infringing sales of the

Plaintiff's X-Ray Flower Work. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity calls for the Defendants to be ordered to cease their unlawful conduct.

### G. Issuance of the Injunction Is in the Public Interest

Courts within this Circuit, and others, have upheld the importance of protecting copyrights. *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1073 n. 11 (7th Cir. 1994) ("public policy strongly favors the protection of copyrights"). The public has an interest in maintaining the protection provided by copyright law so that others are encouraged to create, knowing their works can be protected from infringers. *See Atari, Inc. v. North American Philips Consumer Elec. Corp.*, 672 F.2d 607, 620 (7th Cir. 1982) (finding public interest is served by preserving the integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights").

Here, the public's interest is best served by preserving the Plaintiff's copyrighted X-Ray Flower Work because local merchants are harmed by the sale of counterfeit versions as they are unable to sell their legitimate product and Plaintiff loses vital internet sales nationwide.

Additionally, enforcing copyright laws encourages creative endeavors that benefit the public. *See In re Aimster Copyright Litigation*, 252 F. Supp. 2d 634, 648 (N.D. Ill. 2002) (granting a preliminary injunction because "copyright laws embody a policy of encouraging creativity"). Finally, local consumers are also harmed by buying poorly printed imitations when they actually wanted the real deal.

For all of these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of Temporary Restraining Order is in the public interest.

### IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Plaintiff has sufficiently proven all four elements required to establish the necessity of

a preliminary injunction. As described above, if Defendants are given formal notice of the Plaintiff's request for injunctive relief, they are the sorts of defendants who would likely hide, move, or destroy evidence. *See Century Home Entmt. Inc. v. Laser Beat, Inc.*, 859 F. Supp. 636, 638–639 (E.D.N.Y. 1994) ("it is the norm in this district that where a danger of destruction or hiding of the evidence exists to grant *ex parte* orders of seizures . . . Plaintiff need not show that a particular defendant would not adhere to a TRO but rather only that someone like the defendant would be likely to hide or destroy the evidence of his infringing activity").

Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Finally, under FED. R. CIV. P. 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries, online marketplaces, and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. The facts in this case warrant such relief.

### A.  A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Illegal Use of Plaintiff's Images Is Appropriate

Plaintiff requests an order requiring the Defendants to immediately cease all reproductions, digital or physical, of the X-Ray Flower Work or substantially similar works on or in connection with all Defendant website listings. Such relief is necessary to stop the ongoing harm to the Plaintiff, as well as harm to consumers of the X-Ray Flower Work, and to prevent the Defendants from continuing to benefit from their illegal use of the X-Ray Flower Work. The need for *ex parte* relief is magnified in today's global economy where counterfeiters, infringers, and other nefarious tortfeasors can operate over the Internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other

Defendant websites used to distribute counterfeit or infringing products. A Temporary Restraining Order facilitates a just outcome for the copyright owner, Plaintiff.

### B. An Order Preventing the Fraudulent Transfer of Assets Is Appropriate

To preserve the Plaintiff's right to an equitable accounting of Defendants' profits from sales of counterfeit X-Ray Flower Works, the Plaintiff requests an *ex parte* order restraining Defendants' asset. If such an order is not issued in this case, Defendants almost certainly will abscond with ill-gotten profits and fraudulently transfer financial assets to overseas accounts before an order is issued. If Defendants were to hide or dispose of their assets upon learning of the litigation, an accounting by the Plaintiff would be rendered meaningless.

Courts, in addition to an explicit statutory basis in the Copyright Act, 17 U.S.C. § 504(b), also have the inherent authority to issue a prejudgment asset restraint when a plaintiff's complaint seeks relief in equity. *See Grupo Mexicano de Desarollo, S.A. v. All. Bond Fund*, 527 U.S. 308, 325 (1999) (holding that asset freeze pending outcome of case is proper where plaintiff seeks equitable relief); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question . . . were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."). In addition, the Plaintiff has shown a strong likelihood of success on the merits.

The Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to the Plaintiff all profits realized by Defendants by reason of Defendants' infringing acts. Therefore, this Court has the inherent equitable authority to grant the Plaintiff's request for a prejudgment asset freeze to preserve relief sought by the Plaintiff, and such an order is warranted in this case.

Furthermore, Federal Rules of Civil Procedure 64 and 65 provide authority for preliminary injunctions and the freezing of assets for an accounting and recovery of profits, costs, and damages. FED. R. CIV. P. 64-65. Since Plaintiff seeks recovery of Defendants' profits, an order permanently and continuously freezing the Defendants' assets is within the Court's authority and should be granted. *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, No 1:03-cv-04844, 2005 WL 3115892 at *13 (N.D. Ill. Nov. 8, 2005). Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with the Defendants that are given notice of the order to freeze assets of the Defendants. FED. R. CIV. P. 65.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

## V. PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* FED. R. CIV. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As demonstrated above, Plaintiff is being irreparably harmed by the manufacture,

importation, offering for sale, distribution, and sale of counterfeit X-Ray Flower Works. Defendants have gone to great lengths to conceal their true identities and/or move outside of this Court's reach by, among other things, excluding any identifiable information from Defendants' Webstores. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests an *ex parte* Order allowing expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only that which is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with the Defendants that are given notice of the order to provide expedited discovery in this action. FED. R. CIV. P. 65. Plaintiff is not aware of any reason that Defendants or third parties can not comply with these expedited discovery requests without undue burden. More importantly, as Defendants have engaged in many deceptive practices in an effort to hide their identities and accounts, Plaintiff's seizure and asset restraint Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that the expedited discovery be granted.

## VI. SERVICE OF PROCESS BY EMAIL IS WARRANTED IN THIS CASE

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests an order allowing service of process by electronically sending the Complaint, this Order, and other relevant

documents via Defendant's Webstore registration email, any known or discovered e-mail related to the webstore listed in the Complaint. FED. R. CIV. P. 4. Plaintiff submits that, particularly in this day and age and in this matter involving internet merchants who rely on e-mail communication, providing notice via e-mail is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because the Defendants, on information and belief: (1) have not provided names and physical addresses in the public contact information to their respective Webstores; and (2) rely primarily on electronic communications to communicate with customers, demonstrating the reliability of this method of communication by which the Defendant may be apprised of the pendency of this action.

Plaintiff respectfully submits that an order allowing service of process via e-mail in this case will benefit all parties and the Court by ensuring that the Defendants receive immediate formal notice of the pendency of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve the Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue a remedy as Defendants work to conceal their ill-gotten profits under cover of the pandemic. *See* Nair Declaration at ¶3.

Despite not providing reliable physical contact information directly to consumers, the Defendants, as online merchants, must utilize email to communicate with consumers as they are internet merchants. *See* Nair Declaration at ¶¶7, 8. Moreover, Defendants are required to maintain contact with their online Webstore host company accounts to ensure they are functioning and to communicate with customers electronically. *See* Nair Declaration at ¶8. As such, it is far more likely that Defendants can be served electronically than through traditional service of process

methods and that such service methods will ensure Defendant is apprised of the action and the nature of the claims therein sufficient to provide due process. *See* Nair Declaration at ¶7.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant, like the Defendants here, conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Similarly, a number of Courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; *see also, e.g., Oakley, Inc. v. Does 1-100;* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) (Order granting *Ex Parte* Application for Temporary Restraining Order including service of process by electronic publication and electronic mail); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service); *see also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1- 2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure"). Plaintiff submits that allowing service e-mail in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the Defendants to conduct their illegal Internet-based activities anonymously.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props.*, 284 F.3d at 1014-15. As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* As such, this Court may allow Plaintiff to serve the Defendants via email.

Additionally, Plaintiff is unable to determine the exact physical whereabouts or identities of the Defendants due to their lack of contact information on their Webstores, providing fake addresses on shipping labels including US customs forms, and utilizing common third-party logistics sites within China. *See* Nair Declaration at ¶7. Plaintiff, however, has good cause to suspect the Defendants are residents of China and easily reached by their business email addresses that they must maintain in order to transact on these platforms. *See* Nair Declaration at ¶7.

The United States and the People's Republic of China are both signatories to The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Convention"). Nevertheless, United States District Courts, including in this District, have routinely permitted alternative service of process notwithstanding the applicability of The Hague Convention. *See e.g., In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); *see also In re LDK Solar Secs. Litig.*, 2008 WL 2415186, *2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting

"potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Popular Enters., LLC*, 225 F.R.D. at 562 (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community").

As our investigation bears out, the Defendants are operating out of fictitious addresses and physical service is impossible, the Hague Convention either does not apply or permits alternative service that this Court should authorize to ensure fundamental fairness and due process for all parties. As such, Plaintiff respectfully requests this Court's permission to serve Defendants via email or electronic publication.

## VII. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or permanent injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (4th Cir. 1999).

Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than TEN THOUSAND U.S. DOLLARS ($10,000.00). *See, e.g., Oakley, Inc. v. Does 1-100;* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) ($10,000 bond); *True Religion Apparel, Inc. v. Does 1-100;* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ($10,000 bond).

## VIII. CONCLUSION

Defendants' counterfeiting operations, copyright infringement of Plaintiff's works are irreparably harming Plaintiff's business, its X-Ray Flower Work repute, and consumers who are harmed by illicit replicas. Without entry of the requested relief, Defendants' sale of the

counterfeit products will continue to lead prospective purchasers and others to believe that Defendants' counterfeit products have been manufactured by or emanate from Plaintiff, when in fact, they have not.

Therefore, entry of an *ex parte* order is necessary to protect Plaintiff, its copyrights, and to prevent further irreparable harm to Plaintiff and the consuming public, and to preserve the *status quo*. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a temporary restraining order in the form submitted herewith and set a status hearing before the expiration of the temporary restraining order at which hearing Plaintiff intends to present a motion for preliminary injunction.

Based upon the foregoing, the Plaintiff respectfully requests: (1) an *ex parte* temporary restraining order preventing Defendants from advertising, offering for sale, selling, distributing, transferring, assigning, destroying, or concealing any X-Ray Flower Works, copies of X-Ray Flower Works that are in Defendants' possession, or derivative works substantially similar to X-Ray Flower Works; (2) an order temporarily disabling the Infringing Webstore listings pending the issuance of a final judgment in this matter; (3) an *ex parte* temporary restraining order preventing the fraudulent transfer of Defendants' assets (4) an order for expedited discovery allowing the Plaintiff to inspect and copy Defendants' records and materials relating to X-Ray Flower Works, including those held by third-parties; and, (5) an Order authorization service of process via email under Rule 4(f)(3).

Dated this 13th of April, 2023

Respectfully submitted,

By:_____ /s/  Rishi Nair_____

Rishi Nair

ARDC # 6305871

Keener & Associates, P.C.

161 N. Clark Street, Suite #1600

Chicago, IL 60601

(312) 375-1573

rishi.nair@keenerlegal.com